GERBER, J.,
concurring specially.
Based on Vest ⅛ controlling nature, I am compelled to concur in the majority opinion. I write separately to express my concern regarding the possible effect of the majority opinion.
In theory, the majority opinion would open the door to allow an insured to sue an insurer for bad faith any time the insurer dares to dispute a claim, but then pays the insured just a penny more than the insurer’s initial offer to settle, without a determination that the insurer breached the contract. Such a slippery slope would appear to conflict with the supreme court’s own warning in Vest:
We hasten to point out that the denial of payment does not mean an insurer is guilty of bad faith as a matter of law. The insurer has a right to deny claims that it in good faith believes are not owed on a policy.
753 So.2d at 1275 (emphasis added).
This slippery slope may be avoided if an insured was required either to: (1) establish an insurer’s liability for breach of contract as a condition precedent to suing an insurer for bad faith; or (2) obtain a settlement amount which is at least a certain percentage above the insurer’s initial offer to settle. However, any such requirement is one which the legislature must impose through an amendment to section 624.155, Florida Statutes (2011). This court is unable to impose any such requirement because of Vest’s controlling nature. But see State Farm Mut. Auto. Ins. Co. v. Brewer, 940 So.2d 1284, 1286 n. 3 (Fla. 5th DCA 2006) (“To obtain a, determination regarding liability and the extent of damages owed on the insurance contract [to allow a statutory bad faith claim to pro *614 ceed], [the insured] would need to bring an action on the contract (emphasis added).
The policy claim history in this case provides a good example of why the legislature may wish to require an insured to establish an insurer’s liability for breach of contract, or to obtain a settlement amount which is at least a certain percentage above the insurer’s initial offer to settle, as a condition precedent to suing an insurer for bad faith. Here, after the insureds took two years to file their Hurricane Wilma claim, the insurer took only one month to inspect their home and estimate the amount of their damages. Then, after the insureds took six more months to request the insurer to participate in the policy’s appraisal process, the insurer took only one month to agree to the appraisal process. When the parties’ appraisers did not agree on a damage estimate, it was the insurer, and not the insureds, which first filed a petition requesting the circuit court to appoint a neutral umpire. Within two months of the neutral umpire issuing its own damage estimate, the insurer paid the insureds the neutral umpire’s damage estimate minus the policy deductible.
In sum, the record here provides no basis indicating that the insurer breached the contract, much less failed to act in good faith to settle the claim. On the contrary, the record here indicates that the insurer merely exercised its rights under the contract’s agreed-upon dispute resolution process of appraisal. The insurer’s exposure should be at an end. As our sister court stated in Hill v. State Farm Florida Insurance Co., 35 So.3d 956 (Fla. 2d DCA 2010):
The appraisal process ... is not legal work arising from an insurance company’s denial of coverage or breach of contract; it is simply work done within the terms of the contract to resolve the claim. Thus, except under the most extraordinary of circumstances, we do not envision fees for such work to be recoverable .... Instead, the fees should normally be limited to the work associated with filing the lawsuit after the insurance carrier has ceased to negotiate or has breached the contract and the additional legal work [is] necessary and reasonable to resolve the breach of contract.
Id. at 961 (emphasis added). See also Nationwide Prop. & Cas. Ins. v. Bobinski, 776 So.2d 1047, 1049 (Fla. 5th DCA 2001) (“[I]t maintains the better policy of this state to encourage insurance companies to resolve conflicts and claims quickly and efficiently without judicial intervention. Arbitration and appraisal are alternative methods of dispute resolution that provide quick and less expensive resolution of conflicts.”). Cf. State Farm Fla. Ins. Co. v. Silber, 72 So.3d 286, 289-90 (Fla. 4th DCA 2011) (after insurer paid appraisal award, insureds had no cause of action against insurer to recover attorney’s fees under section 627.428, Florida Statutes, because the purpose of the appraisal process is to resolve disputes without litigation).